All right. May I know what you call the first case? Case number 13-2537, People v. Bachner-Pena. The counsels on the Bachner-Pena matter, please step up. Could you state your name, please? Good morning. Sarah Curry. I represent Bachner-Pena. Okay. Good morning, Your Honors. My name is Patricia Piantilho, and I represent the people of the state of Illinois. Okay. Good morning. All right. We'll give 15 minutes apiece. And do you want to save any time for rebuttal? Yes? Yes, please. Okay. All right. You may proceed. Ms. Curry, please tell us, what should the judge have done here? In regard to which issue? Crankle. Well, what the judge should have done is, first of all, accepted Mr. Pena's motion, his written motion alleging multiple counts of ineffective assistance of counsel. He should have looked over this motion to determine if there were any issues that didn't require a showing of prejudice. If there were any issues that didn't require a showing of prejudice, he should have addressed those issues at the time, because mid-trial would have been an appropriate time to do so. Does it make a difference that it was in the middle of a trial? Would it have made a difference if it was at the beginning or at the end of the trial? The rationale of JACO suggests that it would be the same situation if it was pre-trial or mid-trial. The same, if the requirement of prejudice needs to be shown, then mid-trial and pre-trial, you can't make that showing of prejudice because the outcome has not been determined. In this case, we only listened to, I think, one witness was presented, correct? So there's still two or three more witnesses that we need. Correct. Correct. So any issue of ineffective assistance of counsel that required a showing of prejudice would have been premature at that point. However, if there were any issues raised in Mr. Pena's motion that didn't require a showing of prejudice, those issues could have been addressed mid-trial, and that's what JACO held. In Washington... Is there authority that says that a judge is required to stop the trial and have this inquiry? Well, the Supreme Court suggests in JACO that if the issue did not require a showing of prejudice, pre-trial and mid-trial would be an appropriate time to address that issue. It didn't specifically require that the court had to address that issue at that point, but because a showing of prejudice was not required, it could make a determination of those issues at that point or hold a crankle hearing on those issues at that point. In this case, the trial court didn't even accept the written motion. The trial court had no clue what the multiple counts of ineffective assistance of counsel were that Mr. Pena... Was there a discussion as to what the motion contained? And the defendant then mentioned that his issue was that he was arrested without a warrant? He did get in... he was able to get in that one issue, but he said prior to that, I have multiple counts of ineffective assistance of counsel that were included in his written motion. The judge cut him off, said you're not filing that motion, you have a choice to represent yourself or stick with counsel. Well, I think there was a little bit more discussion, wasn't there? Didn't the judge say that sometimes they don't need a warrant, sometimes they do? Correct, but Mr. Pena only said I was arrested without a warrant. He didn't give any factual basis. There was no inquiry into the factual basis of Pena's claim whatsoever. I mean, to say I was arrested without a warrant is a pretty vague, large issue, and he didn't give him any opportunity to express the factual issue behind his claim, and he just went on to say, yeah, a warrant's not always required. And the arrested officer hadn't testified yet, right? Correct. So we don't know what evidence was going to come in about the warrant or what the basis of the arrest was or if there was any probable cause. And as to that issue, I concede that at that point, that issue was premature to handle mid-trial. The court was not required to hold a Kranko hearing on that specific issue at that point. And the videotape showed this guy doing his deed in the parking lot. Why would a warrant be needed? As I said, Mr. Pena's claim was just blurted out in this back-and-forth with the court. It wasn't clear what the real factual basis of his claim was. Well, don't we have to look to see how he's prejudiced? I mean, if a videotape shows him doing the crime, what more is needed? Well, the club and the glass found in his car were found illegally. That was an illegal search of his car. And if that's what he was discussing, then certainly that is a claim that should be- Was any of that really needed? I mean, the videotape, isn't that enough to convict this guy? Well, no, he wasn't identified in the videotape. His car was identified- Well, Sewell identified him during trial, didn't he? Wasn't the Pep Boys guy on the stand and he said he went along with the videotape while he was testifying and said there's the defendant and there's his van, and it's a distinctive van because it's got a distinctive van on it. He did identify the car. He did not identify Mr. Pena. The videotape was too grainy and he was unable to specifically identify Mr. Pena in the video. He did identify the car, but you couldn't see who was getting in and out of the car. And then you just saw this person, an unidentified person, smashing the vehicles. The court specifically relied on the club and the glass in finding Mr. Pena guilty. The court said that the club was consistent with the type of tool that the person in the video was using to smash these cars and that the broken glass inside the car was consistent with smashed windshields. What about his statement prior to that where he had told the manager of the Pep Boys, I'm going to get you all, I'm going to even this up? Well, he said, I'm going to bring you all down. It's unclear what that means. He was pursuing a civil action against Pep Boys for some physical problems that he had encountered in the workplace. So he could have meant, I'm going to bring you down in my lawsuit. He didn't make any physical threats. He didn't say anything specifically about anything he was going to do. So that's not sufficient to discount the court's specific reliance on this evidence that was illegally found in his car. So is your main complaint that this writing that the defendant gave to the judge, that the judge didn't examine it and didn't go through the issues that are in that writing, in that pro se motion? I think that at the time that Mr. Pena presented it, the court should have looked at it, made a determination whether the issues needed to be addressed now or addressed at the end of trial. At the end of trial, Jocko did not hold that the court has a corresponding duty to revisit those issues raised pre-trial and mid-trial. But the court also held that the defendant doesn't have any obligation to renew his motions. But the problem with this whole issue is that the court never looked at the issues at all. So my question to you is, I understand that the trial court didn't look at the motion. What's in the motion? Let's talk about the merits of the motion. What's in that motion that you think that the trial judge should have discussed with him at that time? Aside from the claim of motion to suppress, we have no idea what's in the motion, and that was the problem with not accepting the motion. Had he accepted the motion and put it in the record, we would know what those claims were, and then we would know if the trial judge had a right not even to revisit the issues, because Jocko and Washington both hold that if the issues are contradicted by the record or blatantly without merit, then the judge doesn't have any obligation to revisit these issues. However, since we don't know what the issues are, we don't know whether they have merit. Did he not know what was in the motion? No, he never let the motion be filed. Did you talk to your client and find out what was in the motion? Well, I couldn't present that to you when it's not in the record. Well, you could do it in the PC, couldn't you? He could do it in the PC, but he tried to do it here. It's in the record that he tried to do it. It's not in the record, and we're not aware of it. That's not Mr. Payne's fault, though. That's what post-conviction petitions are all about, isn't it? But that's what Crankle's all about, is to determine these issues when they're before the trial court, when it's fresh, when you can actually go back and fix these issues. So you disagree with the state that this shouldn't be brought as a post-conviction? No, this should not be. There is plenty of information in this record for this court to decide these issues, but if the Crankle issue lands on a decision … Well, how do we know that the court didn't look at this motion that was presented to us? He said, I'm not going to permit you to file it. So are you asking us … Does that mean he didn't read it? The record makes it pretty clear that he didn't even let them hand it over. Okay, are you asking us for a limited remand so the judge could have an elaborate Crankle hearing now? I'm asking for a remand for a Crankle hearing, yes. However, I'm also asking for a new trial or a remand for a suppression hearing based on the first issue, which would negate the necessity for a Crankle hearing. Well, we're a reviewing court. See, we have to review something. If we don't have the motion to review, how do we review it? You're reviewing the trial court's actions. That's what Crankle is all about. We're reviewing the trial court's failure to make a factual inquiry into … So you're asking for a limited remand, not for a new trial. As to the Crankle issue, yes, I am asking for a limited remand for a Crankle hearing. But I would suggest that this case requires a remand for a suppression hearing at a minimum based on the illegal search of Mr. Payne's car. Where specifically in the record does it say that the court didn't consider the defendant's motion? He said … Where in the record specifically does the court say, I'm not going to consider the motion? In the back and forth when he tried to file it. He said, I'm not going to let you file anything. It doesn't say that he didn't consider the motion. The defendant handed the motion to the judge. The judge asked him, what do you have here? He said, I have several items that I want to raise. And then they started having a discussion. So how do we know that the judge didn't even consider the motion? I mean, first of all, you don't even know what's in the motion. Second of all, where in the record does it specifically say the court said, I am not even considering the motion? I would suggest that the back and forth read closely. It makes it clear that he did not even accept the motion to look at it. So we're supposed to read between the lines? I think it's fairly clear from the … He said, I'm not going to let you file that. It doesn't say that he didn't specifically consider the motion. I mean, I don't have the words right in front of me. But he said, I'm not going to consider it. He says, I'm not going to consider it? Words to that effect, I believe. Words to that effect. He said, you may not file that motion. You have to accept the counsel that's been appointed, or you can represent yourself. And then Mr. Painter tried to get into a discussion about the issues that he was raising in his motion. And the court shut him down. But the case law says, doesn't it, with regard to Crankle, that the failure to conduct a Crankle hearing could be considered harmless if we find that the defendant wasn't prejudiced. And you're telling us that there's no way for us to know if the defendant was prejudiced because you don't know what was in the motion. So my question to you is, I mean, wouldn't it be very easy for this court to say, the record doesn't allow us to determine whether he was prejudiced, and therefore he should bring this as a PC because he can file an affidavit saying what was in the motion, or at least what his complaints were. Right now, there's nothing for us to say that the trial judge failed to inquire about because we don't know what he wanted him to inquire about. Well, I have a two-part answer to that question. First, he did get in the fact that a motion suppressed should have been filed. And that is in the record. And that was a valid issue. That is actually a very good issue that his attorney had filed such a motion and then abandoned it for some unknown reason. And based on this record, the search was illegal, so that's a motion that should have been addressed at the end of trial. I mean, didn't the trial judge tell the defendant to file the motion? Not that I recall. I think it went something like this. He said to him, so I wouldn't need to file this paper, and the court says you can file it so it's on the record, but if it gets to that point, it is needed for appeal. I mean, didn't the judge tell him to file the thing, and he didn't file it? I don't recall that part. Okay, but I do. Okay. He tried to bring his issues, and the court shut him down. That's where he was prejudiced. He had several counts of ineffective assistance of counsel that he wanted to convey to the court, and the court prevented him from doing so. He was not required to bring his issues back up at the end of trial. Jocko holds that. And the court really had no ability to assess his issues without reading his motion. There was a motion to suppress file, wasn't there? There was. And what happened? It was abandoned. It was filed the court date before trial, and it was continued along with the trial for the date of trial and presumably to be held along with the trial. However, defense counsel totally abandoned it, regretfully so, and even when Mr. Pena brought this up on the second day of trial that his counsel was ineffective for failing to pursue such a motion, defense counsel sat silent. That shows that this wasn't a strategic decision. If he had a strategic reason in mind, he would have stated it to the court at that point, and it wasn't strategic because it was a meritorious motion that would have been of great assistance in his defense because the court specifically relied upon the illegally seized evidence. Why do you think that the motion had merit? The motion had merit because the search of Mr. Pena on his front porch was illegal. Terry allows for a brief pat-down search, productive pat-down search, where the officer believes that the defendant may be armed or carrying some sort of weapon. Here, the officer only testified that he conducted the pat-down search because Mr. Pena was sort of moving around and appeared a little anxious. That is a blatant Terry violation. There is no— Did you find a knife on him? He did find a knife on him, but you can't move backwards from— from the basis for the— Then even after he found a knife, didn't he and Pena continue walking to the vehicle? They're having a conversation. They're like old pals walking down the street, and then Mr. Pena gives the police officer the keys to the vehicle. So isn't the search consensual then? No. Why not? Because he's first been illegally patted down. His person has been illegally searched by these officers. It's maybe a few minutes later that the detective is asking for consent to search his car. Certainly after your body was just searched unlawfully, one would be a little leery to their ability to say no to a detective asking, can I search your car? Presumably the detective is still carrying his personal property, his knife that he's just taken from his pocket, so he's still— But there's no evidence in the record about any type of intimidation, is there? The testimony about the encounter suggests that it was quite intimidating. There's no testimony in the record about intimidation? There's no specific testimony about intimidation. However, you have two officers coming to his house, standing on a small front porch illegally patting him down. A few minutes later, they're asking for consent to search. They're still holding his knife, his weapon. You know, the level of coercion is building here. He hasn't been told that he doesn't have to consent or that he's free to leave. The only place he has to go back is right inside his own home. Presumably he doesn't feel that he can do that. But didn't you also tell them where the vehicle was? Because it wasn't right in front of his house. Didn't you mention to them, oh, would you like to— They asked, where's your car? Let's walk over there and then can we search it? The police have been stalking his car for the past two days. They have been driving around looking at it. They wanted to search it. That was the point of going and bringing him onto the front porch and talking to him and leading him to his car and searching it. In the middle of that, they illegally searched him, and that tainted his consent to search the vehicle. The court specifically relied on this information in finding him guilty. It was important information to connect the holes in the grainy video. And Mr. Pena presented—he denied involvement in the offense, and he presented alibi evidence in support of that. And the judge relied on this information in finding him guilty. It was critical information. The court said that that tool that he could see in the video was consistent with the club and that the glass found in the car was consistent with smashed windshields. Mr. Pena testified that his car had been broken into, and that's why he brought a club, reasonable explanation for those items being in his car. The court found otherwise specifically in finding him guilty, and that is why the motion would have been granted. Is the relief that you're asking with regard to that issue is a remand for the purpose of holding a motion to suppress hearing? I'm asking for a new trial, but I understand that under a remand for a suppression hearing, this court can do that as well. The record is sufficient— The trial—new trial is what you're looking for. What you're looking for is a suppression. I'm looking—yes, to suppress the evidence and remand for a new trial. The evidence is—the record is sufficient to make such a ruling. So your motion to suppress would be granted, then there'd be a new trial. Correct. Correct. If there are no other questions— Thank you. Thank you. May it please the court. My name is Patricia Pantone, and I represent the people of the state of Illinois. We are here today to ask this court to affirm defendant's conviction for criminal damage to property. On September 14th or 15th of 2012, defendant was fired from Pep Boys. As he left, he stated, you finally got me, and I guess I'll just have to bring everybody down now. Approximately one day later, defendant returned to the Pep Boys. Video surveillance from Pep Boys captured— May I ask a question? Yes, your honor. Being fidgety, is that enough? Being very anxious, is that enough? It's one factor to be considered, your honor, but here, Detective Rose and his partner had reason to believe the defendant was armed, because defendant made threats. He carried out these threats when he returned to the Pep Boys and smashed— He didn't make any threats to the police officer. No, he did not, your honor. But the video depicts a person with an object in their hand damaging these cars. Given the threats, given the fact that he had carried out these threats using a blunt object, given his fidgety and anxious behavior, your honor, that was reason to believe that defendant was, in fact, armed and dangerous and justified the first— What was the evidence that the detectives felt that their safety was in jeopardy? Well, your honor, Detective Reyes, during trial, did not testify specifically about why he believed that defendant was armed and dangerous, because there wasn't something that was at issue. At trial, what was at issue was defendant's guilt, so it's natural that— There's an argument that Ms. Courage has made, and that is that because of counsel's failure to proceed forward on the already filed motion, there was—the record was never developed with regard to the question of whether the search was appropriate or not. I mean, the police officer did never get on the stand and wasn't asked, well, why did you think it was necessary to pat him down? Why did you think it was necessary to do a Terry search at that time? And so what Ms. Courage is saying is, you know, there was never an opportunity for us to flesh out the Fourth Amendment issues. That's correct, your honor, but an officer's subjective belief is only one factor to be considered in making the objective determination whether a reasonably prudent person would believe that defendant was armed and dangerous. In this case, even without the testimony of Detective Reyes, this court could find that a reasonably prudent person would find that defendant was armed and dangerous given the threats made against the Pep Boys. The fact that he carried out these threats, his fidgety and anxious behavior, that was sufficient to lead to a reasonable belief that defendant was armed. What about the statement that Ms. Courage made just a few minutes ago that you can't go backwards? So it turns out that this officer had pretty good insight because he thought that the defendant was kind of fidgety and nervous and he patted him down and he actually did find another firearm. Can we consider that? Your honor, that's correct that we can't go backwards, but the fact of the matter is what was recovered from the defendant is sort of irrelevant at this point because he wasn't charged with anything that was found on his person and the frisk and the search, the consent to search of his car, are two separate events. They're not related. Once the frisk was over, defendant was in fact free to leave. While defense counsel argues that he was never told that he could leave, the case law is pretty clear that police officers do not have to tell a defendant that he is free to leave. Defendant was on his front porch and they walked down a public sidewalk. There's nothing in the record indicating that defendant was handcuffed, that he was under arrest. In fact, he voluntarily walked approximately a block over to his car where he handed over his keys for the vehicle to be searched. What about this issue that there was two officers, they're standing on his porch and they're intimidating Mr. Pena? Your honor, two police officers, one defendant, there's several factors to be considered when determining voluntariness and those include things like the number of police officers here. It's only two police officers. There's nothing indicating that police officers ever touched defendant, that they ever used language or tone that indicated defendant that he had to comply with their request to go to his car to search his car. So in this case, while there's two police officers, it's only one of the factors in the many to be considered and certainly having two police officers to interview one defendant who has gone to return to this public and damaged all these cars using a blunt object is not unreasonable. And the police officers never drew their weapons and also they traveled the block without restraining. That's correct, your honor. But even without the consent to search, even without any of the information, or the consent, excuse me, from defendant to search the car, Detective Reyes and his partner have probable cause to believe that defendant's car was used in, was an instrument used in an offense and that the car contained evidence. So even without defendant's consent, Detective Reyes and his partner have probable cause to search this car. Nevertheless, even without the evidence recovered from the defendant's car, defendant's conviction is supported by overwhelming evidence in this case. You have the uncontroverted testimony of the Pep Boys manager who testified that defendant was fired, that defendant made these threats, and in fact identified defendant's car in the video surveillance footage. Well, they argue that he wasn't able to make out who it was actually. He was able to check out the vehicle but not the individual. That's correct, your honor. The manager did not identify defendant in the video, but he did identify the video as it was defendant's car that was in the frame on that video. And the video itself depicts a car resembling that of defendant with a very distinctive right front quarter panel that's black in color drive into the parking lot. The video depicts someone with an object in their hands damaging these 16 vehicles. And then shortly thereafter, the same vehicle that entered the parking lot departed the parking lot. Detective Reyes and his partner had also seen this same car that was in the video parked directly in front of defendant's home prior to this interview, all leading to probable cause to believe the defendant committed this offense. And not only that, during the interview, police officers noted the bruises on defendant's right arms, as well as the statements that defendant made that he couldn't admit to it even if he did it because he would be deported to Guatemala, and that he had a pending lawsuit against Pep Boys. Let's move to the critical here for a moment. Yes, your honor. So the defense argues that Mr. Pena wasn't even permitted to file his motion, that the court didn't even review the motion. Well, your honor, the record demonstrates the trial court certainly did not limit defendant from articulating the basis of his claims in his motion. The trial court also did not tell him that he could not file. Contrary to defendant's assertion, he was not told that he could not file this motion. And under the facts here, the trial court properly dismissed defendant's ineffective assistance of counsel claim mid-trial when it assessed the only claim that it had before, and that was defendant's complaint that his defense counsel was apathetic about him being arrested without a warrant. The judge's statement that sometimes they use a warrant, sometimes they don't. I mean, isn't that kind of just giving short shrift to the defendant's assertions here? Well, your honor, under JACO, the trial court is not required to, when a claim would require a showing of prejudice, the trial court is not required to, in fact, conduct a hearing at that point. So a claim that he was arrested without a warrant would be one that would require a showing of prejudice. So it was not something that the trial court at that time was required to look into. The only kinds of claims that the trial court is required to conduct a hearing on mid-trial are those of conflict of interest and a chronic, excuse me, a complete deprivation of counsel. That is certainly not what we have here. Defendant's claim required a showing of prejudice and would not have been appropriate until post-trial in a hearing. However, the trial court was not required to have a post-trial hearing under these facts because it dismissed the only claim it had before it as meritless. Certainly the trial court is not required to conduct a post-trial hearing on a claim that's meritless simply to reject it on its face once again. The trial court is also not required to conduct a hearing on a claim that, even if true, simply did not prejudice defendant, and that's what we have here. The trial court was unaware of any additional claims that might have existed, and the trial court was justified in believing that there were no additional complaints because defendant, when given an opportunity to speak, did not raise any additional issues. Defendant also did not raise or fire a post-trial motion alleging ineffective assistance of counsel. While under JACA, defendant is not required to renew his claims, without the presentation of any additional claims, there is nothing for the court to, in fact, conduct a hearing on. What about the trial court's statement that if you don't want a public defender to help you, you're going to end up representing yourself? Is that an accurate statement of the law? Well, Your Honor, the defendant could either proceed with his counsel, his appointed counsel, represent himself, or hire his own attorney, yes. And, you know, in this case, he made a decision to then proceed with his counsel. But again, the trial court did not limit defendant at any point from articulating any additional basis of his claims, and the trial court was certainly under no sui sponte duty post-trial to ensure the defendant was satisfied with his counsel. Here, the colloquy between the defendant and the trial court was sufficient to satisfy the trial court's student responsibility under Krenkel and his progeny, and the trial court properly determined the defendant was not entitled to a post-trial hearing. Should it matter to us when we review this whether or not the motion should have been brought at the beginning, the middle, or at the end of the trial? The Krenkel? Yes. I'm sorry, could you repeat your question, Your Honor? The motion that the defendant presented in terms of ineffectiveness of counsel. Yes. Does it matter when it's conducted, when it's presented to the court? Well, it seems under JACO anything presented pre-trial, there's no case that holds that a mid-trial assertion of ineffectiveness of counsel requires something different than a pre-trial motion of ineffectiveness of counsel. And under JACO, the trial court is not required to conduct a mid-trial hearing on a claim that requires a showing of prejudice. It's only when claims do not require a showing of prejudice, again, such as conflict of interest or complete deprivation of counsel, that the court would be obligated to conduct a hearing then. Because this case under the defendant's claim would require a showing of prejudice, it was premature at any time before the trial was over. But again, the trial court was not required to conduct a post-trial hearing on this particular claim. The only claim that we have before us, and this court has to consider, is defendant's complaint that his counsel was apathetic, that he was arrested without a warrant. The trial court dismissed that at Meribus. And after the first day of trial, the trial court had heard the testimony of Detective, excuse me, of the Pet Boys manager, Chris Sewell. And the testimony by Chris Sewell was sufficient at that point to convict defendant. And even without the shards of glass or the club that were found in the car, even without Detective Ray's testimony, this court could determine at that time that defendant's claim was meritless. For these reasons, Your Honor, and those stated in that brief, we ask this court to affirm defendant's convictions and sentence. Thank you. Thank you. The state argues that the defendant didn't raise the crinkle issues, the ineffectiveness of assistance of counsel issues post-trial, and as Jacko holds, he had no requirement to do so. Jacko also holds that there's no sui sponte duty for the court to readdress these issues at that point. However, Washington did say that the court should address these issues post-trial on its own. And here, with the issue regarding the motion to suppress, certainly there was a factual inquiry at a minimum that needed to be held. After the court hears this evidence, hears that the defendant has been patted down without any legal authority, that as a result of this, these items are found in his car, and the court specifically relied on them in finding him guilty. The state just told us that the pat-down is really irrelevant because the knife isn't an issue in the trial. He wasn't charged with handling the knife. The pat-down goes specifically to the nature of the encounter that followed. He's now, as the state said, that he hadn't been touched. He certainly was touched. He was patted down by two officers. This certainly elevates the coercive nature of this encounter to the degree that he did not feel he had the authority to consent to this search, the illegal search of his person. There was no automobile exception to the warrant requirement. The state also said that they didn't need his consent. There was not probable cause to search this vehicle. This was two days later. This vehicle was identified. It has a distinctive quarter panel, and it was seen in the videotape. Correct, but the probable cause needs to be that there will be contraband found in this vehicle. There's no contraband that would have been located in this vehicle that the detectives could have specifically pointed to. Anything that might have been related to this offense was portable, and this is two days later. Had they had probable cause, the two times that the detective had circled the block looking at this car, he could have searched it. He didn't because he didn't have probable cause. There's nothing that he would have specifically been looking for. That's why he went to the house, he patted him down, and he got him to consent to search so that he could take a look at what was in the car. It was stale because the two days went by. But there would be contraband related to this offense found in the car. Whoever this offender was, was seen on the videotape utilizing a distinctive van and had a tool, some type of tool, and that there was glass breaking all over the place. Wouldn't there be probable causes to search a vehicle that was at the scene of the crime and was utilized in terms of getting to the scene of the crime and leaving the scene of the crime? Not under the warrant exception to the probable cause because anything that they would have been looking for, there was no telling that there would have been shards of glass found in the car. That wouldn't have been something that you would have reasonably expected. In addition, whatever tool... So wouldn't it be reasonable to expect it? No. If a person is going around with a club and breaking glass everywhere, don't you think some of that glass would go into his clothes and when he gets into a car the glass would fall on the ground of the car, inside the car? Wouldn't that be reasonable? I mean, I can't imagine that the car wouldn't be something that would be searched under those circumstances. If the police had probable cause to search the vehicle, they could have searched it the two times they drove past it before. They didn't have probable cause. Moreover, the issue here is whether counsel was ineffective for failing to file a motion to suppress. They don't have probable cause to search that vehicle. They'll never have probable cause to do anything. For example? Well, the issue before this Court is whether the consent was tainted by the illegal pat-down search of Mr. Payne and whether defense counsel was... Well, let me put your claim as ineffective assistance to counsel. Correct. The second prong of Strickland's prejudice. And if we find that there was probable cause to search that vehicle anyway, then there's no prejudice. Our position is that there was not probable cause to search the vehicle and if there had been, they would have searched it the two days before. You don't get to search a vehicle that two days earlier was in the scene of the crime and was utilized to arrive at the scene of the crime. The case is talking about probable cause to search a vehicle, dealing with contraband that is specifically seen being put into a vehicle... The case is clearly just contraband but also evidence of crime. Correct. I would argue that those cases are much closer than two days later with some unknown tool that could easily have been removed from the car or... Well, that goes back to my original question. Are you saying that any probable cause that existed was now stale? Yes. If there are no... Is there some authority for the fact that if there's probable cause to search a vehicle, that there's some exigency requirement, that they have to search it the first opportunity that they can? You know, sometimes the police, well, you used the words, they stalk, but I mean sometimes the police will sit on a car and they'll wait because they want to find the guy who's coming in the car. Are you saying that they have to search it right away? I don't have any authority for that proposition. I would say in this case the nature of whatever items they thought that would be in the car would have been portable and to wait two days to search it reduced the probable cause. If there are no other questions. Okay. Thank you very much. The court wants to thank counsels on a very well-argued matter. We're going to take it under advisement and then call the next case, please.